**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-CR-0032-CVE |
| ) | (05-CV-0386-CVE-SAJ) |
| STEVEN JOHN WORLEY, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

On July 7, 2005, defendant Steven John Worley, a federal prisoner appearing *pro se*, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Dkt. # 66. The government has filed a response. Dkt. # 73. For the reasons discussed below, the Court finds the section 2255 motion should be denied.

**I**.

On April 1, 2004, defendant pleaded guilty to conspiracy to knowingly or intentionally possess or distribute a listed chemical knowing, or having reasonable cause to believe, that the listed chemical will be used to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(c)(2) and 846, and conspiracy to launder money, in violation of 18 U.S.C. § 1956(h). As part of the plea agreement, defendant signed a waiver of appellate rights. Dkt. # 33, at 3. On July 8, 2004, the Court sentenced defendant to 108 months imprisonment and a three (3) year term of supervised release. Judgment was entered on July 14, 2004. Dkt. # 50.[1]

---

[1] An amended judgment, Dkt. # 51, was entered July 20, 2004 to correct a clerical error in the sentencing date.

Defendant's section 2255 motion, while not clear, in effect raises three (3) grounds to vacate, set aside, or correct his sentence. First, he argues that he "was sentenced in accordance with guidelines that are not constitutional," presumably relying on United States v. Booker, 125 S.Ct. 738 (2005). Next, he contends that he "was not granted the downward departures applicable and as agreed upon." Finally, defendant makes an ineffective assistance of counsel claim: he states that he "was not well advised as to the relevant law by lawyer" regarding both counts; and that he "pled to the money laundering charge but was not well advised as [sic] what actions constituted [sic] that crime." Dkt. # 66, at 4-5. Accordingly, defendant asks the Court to "vacate and/or modify [his] sentence to time served or allow [him] to withdraw [his] previous plea [sic] and at the most place [him] on probation, at the least give [him] more & reasonable [sic] departure." Id. The Court finds that defendant's first two grounds for relief are barred as a result of the waiver of appellate rights executed by defendant, and the claim of ineffective assistance of counsel is meritless.

**II.**

Courts "generally enforce plea agreements and their concomitant waivers of appellate rights." United States v. Hahn, 359 F.3d 1315, 1318 (10th Cir. 2004) (en banc). Hahn established a three step analysis for determining the validity of an appellate waiver. Id. at 1325. First, the Court looks at whether the defendant's claims fall within the scope of the waiver of appellate rights. Id. Second, the Court determines whether defendant's waiver was knowing and voluntary. Id. Finally, a court examines whether "enforcing the waiver would result in a miscarriage of justice." Id.

Examining the scope of the waiver under the first Hahn step, defendant "agree[d] to waive all appellate rights, including any and all collateral attacks including but not limited to those pursued by means of a writ of habeas corpus, save and except claims of ineffective assistance of counsel."

2

Dkt. # 33, at 3 (emphasis added). Therefore, defendant's first two claims raised in his section 2255 motion, that his sentence is unconstitutional under Booker and that he is entitled to a downward departure, clearly fall within the scope of his appellate waiver as collateral attacks other than ineffective assistance of counsel. See United States v. Green, 405 F.3d 1180, 1189-90 (10th Cir. 2005) ("Booker arguments . . . fall within the scope of his appellate rights waiver").

Next, the Court examines whether defendant's appellate waiver is voluntary and knowing. "When determining whether a waiver of appellate rights is knowing and voluntary, we especially look to . . . whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily . . . [and] for an adequate Federal Rule of Criminal Procedure 11 colloquy." Hahn, 359 F.3d at 1325. Defendant signed and dated the page of the plea agreement which expressly provides:

> I have read this agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines which may apply to my case. No other promises or inducements have been made to me, other than those contained in this pleading. In addition, no one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

Dkt. # 33, at 25. Included in the plea agreement is the following waiver of appellate rights:

> The Defendants agree to waive all appellate rights, including any and all collateral attacks including but not limited to those pursued by means of a writ of habeas corpus, save and except claims of ineffective assistance of counsel.

Id. at 3. Defendant initialed each page of the plea agreement and signed it in open court on April 1, 2004. On that date, the Court accepted and filed of record defendant's plea agreement and his petition to enter plea of guilty, Dkt. # 35, hereinafter "petition", which provides:

> By pleading guilty I understand I waive, that is, give up all pretrial motions, and can not assert any such motions before the Court or on appeal after pleading guilty. . . . I know that the Court will not permit anyone to plead 'GUILTY' who maintains he is innocent and, with that in mind, and because I am 'GUILTY' and do not believe I am innocent, I wish to plead 'GUILTY' respectfully request the Court to accept my plea of 'GUILTY' and to have the Clerk enter my plea of 'GUILTY' . . . .

Dkt. # 35, at 3.

At the plea hearing, defendant acknowledged that he had read the plea agreement and understood the terms of the plea agreement, including the appellate waiver. Dkt. # 74, hereinafter "Plea Transcript", at 6-7. Defendant denied that "anyone made any other or different promise or assurance of any kind to [him] in an effort to induce [him] to plead guilty." Id. at 7. The following exchange between the Court and defendant is further evidence of a knowing and voluntary waiver:

> THE COURT: Has anyone attempted in any way to force you to plead guilty?
> THE DEFENDANT: No, ma'am.
> THE COURT: Are you pleading guilty of your own free will because you are guilty?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: Do you understand the charges against you?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: If you enter a plea of guilty, do you understand that the Court may sentence you to a term of imprisonment or a fine or both imprisonment and fine?
> THE DEFENDANT: Yes, ma'am.
> . . .
> THE COURT: Do you understand that the maximum sentence which may be imposed may include a term of imprisonment not to exceed ten years for Count 1 and 20 years for Count 2?
> THE DEFENDANT: Yes, ma'am.

Plea Transcript at 8-9.

In the presence of defendant, the prosecutor explained that the plea agreement contains "waivers of the defendant, Steve Worley's constitutional rights, including, on page 3, an appellate waiver wherein he would agree to waive all appellate rights including any and all collateral attacks,

including but not limited to those pursued by writ of habeas corpus except claims of ineffective assistance of counsel." Id. at 3.  The following exchange ensued:

> THE COURT: Do you understand that your plea agreement contains an appellate waiver?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: You understand that you are agreeing to waive all appellate rights including any and all collateral attacks including by writ of habeas corpus except for claims of ineffective assistance of counsel?
> THE DEFENDANT: Yes, ma'am.

Id. at 12-13.

The Court asked defendant:  "Mr. Worley, understanding the nature of the charges, your right to a jury trial, and your voluntary waiver of such right, and understanding the effect and consequences of a plea of guilty, how do you plead . . .?" and defendant pleaded guilty to both counts 1 and 2.  Id. at 20.  Before accepting his pleas, the Court asked:

> THE COURT: Are your pleas of guilty and the waivers of your rights made voluntarily and completely or your own free choice, free of any force, threats, or pressures from anyone?
> THE DEFENDANT: Yes.
> THE COURT: Are you relying on any representations or promises, express or implied, which are not clearly and specifically stated in the written plea agreement?
> THE DEFENDANT: No.
> THE COURT: It is the finding of the Court in the case of the United States versus Steven John Worley, based upon the defendant's admissions, demeanor, and responsive answers to my questions, that the defendant is fully competent and capable of entering an informed plea.  That the defendant is aware of the nature of the charges and the consequences of the plea, and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense.  The plea is therefore accepted and the defendant is now adjudged guilty of Counts 1 and 2 of the information.

Id. at 20-21.

The plea agreement's waiver of appellate rights, the representations in the petition, and the Rule 11 colloquy make clear that defendant's waiver of his appellate rights was knowing and voluntary.

Further, defendant's appellate waiver is not rendered unknowing and involuntary by the Supreme Court's subsequent decision in Booker.[2] Green, 405 F.3d at 1190 ("a defendant's decision to give up some of his rights in connection with making a plea -- including the right to appeal from the judgment entered following that plea -- remains voluntary and intelligent or knowing despite subsequent developments in the law"). As part of his plea agreement, defendant signaled his intent generally to waive his constitutional rights, including the right to appeal his sentence. Id.; see also Brady v. United States, 397 U.S. 742, 757 (1970) ("a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise.").

Finally under Hahn, whether enforcement of defendant's appellate waiver qualifies as a miscarriage of justice depends on whether: 1) "the district court relied on an impermissible factor such as race;" 2) "ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid;" 3) "the sentence exceeds the statutory maximum;" or 4) "the waiver is otherwise unlawful." Id. at 1327 (citing United States v. Elliott, 264 F.3d 1171, 1173 (10th Cir. 2001)). The first factor is not at issue in this case. The second factor of ineffective assistance of

---

[2]   The Court entered its judgment on July 8, 2004, and defendant did not pursue a direct appeal. Thus, his conviction became final following the ten day period to appeal his case, or on July 22, 2004. See Fed. R. App. P. 4(b)(1)(A). Therefore, for purposes of retroactivity analysis, defendant's case was "final" over five months before the Supreme Court decided Booker on January 12, 2005. The Supreme Court expressly applied its holding in Booker only to cases on direct review. Booker, 125 S.Ct. at 769. That Court did not expressly declare, nor has it since declared, that Booker should be applied retroactively to cases on collateral review. In addition, the Tenth Circuit has refused to apply Booker retroactively to cases on collateral review. United States v. Bellamy, 411 F.3d 1182, 1188 (10th Cir. 2005) ("Booker does not apply retroactively to initial habeas petitions); cf. Bey v. United States, 399 F.3d 1266, 1269 (10th Cir. 2005) (holding Booker does not apply to second or successive habeas petitions); United States v. Price, 400 F.3d 844, 849 (10th Cir. 2005) (holding Blakely v. Washington, 542 U.S. 296 (2004), is not subject to retroactive application on collateral review).

6

counsel has not been raised in connection with the negotiation of the waiver and, as discussed in section III below, has not been shown as to the validity of his guilty plea. Defendant's sentence of 108 months does not exceed the statutory maximums allowed for the crimes to which he pled guilty. 21 U.S.C. §§ 846 and 841(c)(2) (not to exceed ten years); 18 U.S.C. § 1956 (not to exceed twenty years); see United States v. Maldonado, 410 F.3d 1231, 1233 (10th Cir. 2005) (holding the "statutory maximum" refers to the statute of conviction for purposes of a Hahn miscarriage of justice analysis). To satisfy the test of an "otherwise unlawful" appellate waiver, "'the error [must] seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings.'" Hahn, 359 F.3d at 1327 (quoting United States v. Olano, 507 U.S. 725, 732 (1993)). Under United States v. Porter, 405 F.3d 1136 (10th Cir. 2005), the subsequent issuance of Booker does not render defendant's plea agreement unlawful. Id. at 1145. Similarly, defendant's plea agreement is not unlawful based on failure to grant a downward departure because no such right exists.[3] The Court concludes that defendant has failed to demonstrate either that there was any error in his sentencing or that any alleged error in his sentencing seriously affected the fairness, integrity or public reputation of judicial proceedings. See Maldonado, 410 F.3d at 1233 ("the defendant bears the burden of persuasion on this point"). Consequently, his appellate waiver is not "otherwise unlawful" and its enforcement would not result in a miscarriage of justice. The plea agreement constitutes an

---

[3] Defendant's plea agreement expressly states that the "United States may move for a downward departure . . . as appropriate; provided, however, regardless of the nature and extent of any assistance given hereunder, the United States shall have no obligation to move for a downward departure. . . . Any good faith determination by the United States that the Defendant Steven John Worley has failed to provide substantial assistance, has knowingly provided materially false information or has neutralized his availability to be called as a witness is within the sole discretion of the United States." Dkt. # 33, at 14-15. The United States did not file a motion for downward departure, and it was under no obligation to do so.

7

enforceable waiver of appellate rights, and precludes consideration of grounds 1 and 2 as raised by defendant here on collateral review.

### III.

Defendant's appellate waiver expressly excludes claims of ineffective assistance of counsel. Ineffective assistance of counsel claims are guided by the Strickland test. Strickland v. Washington, 466 U.S. 668 (1984). To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Id. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). Under the Strickland test, a defendant must show that, first, "his trial counsel committed serious errors in light of 'prevailing professional norms' and that [second] there is a 'reasonable probability' that the outcome would have been different had those errors not occurred." United States v. Haddock, 12 F.3d 950, 955 (10th Cir. 1993) (quoting Stickland, 466 U.S. at 688); see United States v. Mora, 293 F.3d 1213, 1217 (2002). To establish the first prong, a defendant must show that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential because there is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688.

Addressing the first prong of the Strickland analysis, the Court finds that defendant has failed to demonstrate that defense counsel's performance was constitutionally deficient. Specifically, his plea agreement states:

> I have read this agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines which apply to my case. . . . Finally, I am satisfied with the representation of my attorney in this matter.

Dkt. # 33, at 25. The first page of defendant's petition states that defendant's "attorney has counseled and advised [him] on the nature of each charge, on all lesser included charges, and on all possible defenses that [he] might have in this case." Dkt. # 35, at 1. In the petition, defendant attested that "I swear that I have read, understood, and discussed with my attorney, each and every part of this Petition to Plead Guilty, and that the answers which appear in every part of this petition are true and correct." Id. at 6.

In his section 2255 motion, defendant claims that he was "not well advised" as to the charges against him. Dkt. # 66, at 4. However, the plea agreement and the Rule 11 colloquy belie this assertion. First, the plea agreement clearly states the charges as to which defendant was pleading, outlines the elements of each charge, and contains a detailed description of what defendant did to commit these offenses. Dkt. # 33, at 1, 6-12. Defendant stated under oath that he understood the charges against him, Plea Transcript at 8, and the Court advised the defendant of the two charges as to which he was pleading guilty. Id. at 15-16. Finally, the Court explained the elements of each charge:

> THE COURT: With regard to what the government would be required to proved at trial . . . as to Count 1, the government would have to show that you attempted or conspired to commit the act of possession or distribution of listed chemicals; that you did that knowing or having reasonable cause to believe that the listed chemicals would be used to manufacture a controlled substance, here methamphetamine; and that that occurred within the Northern District of Oklahoma. Do you understand that that's what the government would have to prove as to Count 1?
> THE DEFENDANT: Yes, ma'am.

>THE COURT: As to Count 2, the government would be required to show that you conspired to commit an offense under 18 U.S.C. 1956, which included knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity; that you conducted or attempted to conduct such financial transactions which, in fact, involved the proceeds of specified unlawful activity, here the sale of the listed chemicals; and you did so with the intent to promote the carrying on of specified unlawful activity, and that you did that in the Northern District of Oklahoma. You understand that that's what the government would have to prove?
>THE DEFENDANT: Yes, ma'am.

Id. at 16.

At the Court's request, defendant explained and assented to the facts constituting the crimes charged:

>During the months of January through April, 2003, I conspired with Allied Chemical Supply, Incorporated . . . to sell various flasks, pH papers, gloves, toluene, sodium hydroxide, phosphorus acid flakes, acetone, muriatic acid, sodium chloride, sodium thiosulfate, and a one gallon hand pump sprayer to a person at their request. This was done in Tulsa, Oklahoma. During the same period of time, I conspired with Allied Chemical Supply, making various sales of chemicals commonly used in the manufacture of methamphetamine when I knew that such sales were suspicious. During the same period of time in Tulsa, Oklahoma, I conspired with Allied Chemical, Incorporated, to sell the same individual on the same day more iodine than the law allowed. At the same time of making such sales, I had been advised by law enforcement officers that chemicals bought from my company were being discovered in various clandestine methamphetamine labs. I was also advised that such sales were suspicious and that it was illegal to make such sales. While conducting these suspicious sales, I carried an automatic pistol. On Count 2, between the dates of December 2004 [sic] and March 26th, 2003, in Tulsa, Oklahoma, I conspired with Allied Chemical, Incorporated, to purchase iodine crystals with money received from suspicious sales which culminated in clandestine methamphetamine manufacturing. I intended to continue such sales to carry on my business, that of Allied Chemical Incorporated.

Plea Transcript at 17-18.

Defendant affirmed that he had "fully discussed those charges and the case in general with Mr. Gordon as [his] counsel" and that he was "fully satisfied with the counsel, representation, and advice given to [him] in this case by [his] attorney, Mr. Gordon." Plea Transcript at 6. Based on this

record, defendant's allegations that he "pled guilty but was not well advised as to the relevant law by lawyer" and that he "was not well advised as [sic] what actions constitued [sic] that crime" of money laundering are without merit. In addition, defendant has completely failed to satisfy the prejudice prong of the Strickland standard as to either of his claims. To establish this prong, a defendant must show that his attorney's deficient performance prejudiced the defense to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In the context of a guilty plea, the "prejudice" requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process, and, to establish "prejudice," the defendant must show that there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Nowhere in his pleadings does defendant suggest that but for counsel's deficient performance, he would not have pleaded guilty and would have proceeded to trial on the charges.[4] The Court holds that defendant has failed to demonstrate that he was prejudiced by his counsel's allegedly deficient performance. As defendant did not receive constitutionally ineffective assistance of counsel, he is not entitled to relief under section 2255 for this claim.

---

[4] The Court is not required to fashion defendant's arguments for him where his allegations are merely conclusory in nature. See United States v. Fisher, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting pro se defendant's ineffective assistance of counsel claims as conclusory).

Defendant has failed to demonstrate entitlement to relief on any claim asserted in his section 2255 motion.  Therefore, defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 66) is **denied**.

**IT IS SO ORDERED** this 13th day of October 2005.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT